22-06470MB

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

1. I, Daniel DeAntonio, Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

2. Your affiant, Daniel DeAntonio, is a Special Agent of the FBI and is currently assigned to the Tucson office. Your affiant has been a with the FBI since January 2019 and has been assigned to the Tucson office for his whole career. In the course of his official duties, your affiant is responsible for investigating federal crimes occurring within the District of Arizona, which include violent crimes occurring within Indian Country. Your affiant has training and experience in investigating such crimes. Your affiant has investigated crimes that involve the examination of cell phones and other electronic devices to obtain evidence. Due to this experience, your affiant has an understanding of the information contained in cell phones and other electronic devices.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, investigators, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have set forth only the facts I believe are necessary to establish probable cause to believe that evidence of a crime involving Manslaughter, in violation of Title 18, United States Code, Sections 1112 and 1153, is located within the black, Samsung cell phone; IMEI: 350214928143539 (SUBJECT DEVICE) further described in Attachment A. Accordingly, this application requests authority to search the SUBJECT DEVICE as described in Attachment A, for evidence of this crime as described in Attachment B.

4. This Court has jurisdiction over this offense under 18 U.S.C. §§ 1112 and 1153, because the below-described events occurred within the confines of the District of Arizona, on the Tohono O'odham Indian Reservation, Indian Country, in Pima County, Arizona.

22-06470MB

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The device to be searched pursuant to the attached Application is described in Attachment A as a black Samsung cell phone; IMEI: 350214928143539 (SUBJECT DEVICE). The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B. Based on your affiant's training, experience, and understanding of this investigation, he believes that the SUBJECT DEVICE is capable of maintaining evidence as set forth in Attachment B, to include photographs, messages, web searches, location data, and other contacts.

## PROBABLE CAUSE

6. On November 22, 2022, at approximately 3:08 a.m., the Tohono O'odham Police Department (TOPD) responded to a roll over motor vehicle accident on Federal Route 19, in the area of mile post 21.9. Officers observed a male, later identified as Hunter Lane Johnson (JOHNSON), who explained that a female was ejected from the truck. The truck was a 2015 white Dodge Ram 1500, VIN number 1C6RR6LT1FS634427, bearing Arizona registration plate Z6A6B6A (hereinafter referred to as SUBJECT VEHICLE).

7. TOPD Officers observed an unknown female not breathing and without a pulse, outside the SUBJECT VEHICLE. The female was pronounced dead at the scene. JOHNSON identified the deceased female as Leia Serapo (SERAPO). JOHNSON further explained to TOPD that the deceased female was driving the vehicle at the time of the accident. TOPD Detective Michael Rivas asked JOHNSON if he was injured and asked JOHNSON if he could lift his shirt so Detective Rivas could check him for injuries. While lifting his shirt, Detective Rivas observed what appeared to be a seat belt mark that started at the top left shoulder of JOHNSON and extended to JOHNSON's left pectoral area . A Tribal search warrant was obtained for a blood draw of JOHNSON's blood and was executed accordingly. JOHNSON was arrested by TOPD for Aggravated Assault and Interfering with Police.

8.      TOPD OFFICERS responded out to the suspected female victim's house but were told by the resident that she was SERAPO. The deceased female victim remained unidentified, and her body was transported to the Pima County Office of the Medical Examiner (OME). TOPD had the SUBJECT VEHICLE towed from the scene and an inquiry of the vehicle showed it was registered to JOHNSON. A white, Samsung cell phone was located on the scene and is believed to be the victim's cell phone. TOPD collected this cell phone, and it was entered into their evidence system.

9.      Your affiant was notified of the incident on November 20, 2022, and along with Detective Rivas and FBI Special Agent Francine Silva, went to the Pima County OME, to attempt to identify the unknown female victim. The female victim's fingerprints were taken digitally but no match was confirmed. Multiple tattoos were observed on the victim and were then compared to a possible victim's photo. The tattoos and photos confirmed the female victim to be Kristen Manuel (MANUEL). A federal search warrant was obtained for the white, Samsung cell phone, which is believed to have belonged to MANUEL.

10.     On December 6, 2022, Tohono O'odham Corrections (TOC) released JOHNSON's property to his family. The SUBJECT DEVICE was included in the property released to JOHNSON's family. In response, Detective Rivas drafted a Tribal search warrant and obtained the SUBJECT DEVICE from JOHNSON's mother, Linda Leonard (LEONARD), to prevent the destruction of possible evidence. The SUBJECT DEVICE was entered into TOPD evidence and remains at TOPD.

11.     Through my training and experience, your affiant knows that cell phones contain information related to where a person was via GPS, and who they may have been with via messages and/or phone call records. This information could show where JOHNSON was prior to the accident and the route that the vehicle took. Messages from the SUBJECT DEVICE could show evidence of JOHNSON texting another individual regarding his whereabouts and who he was with. All this information could be contained on the SUBJECT DEVICE.

22-06470MB

## TECHNICAL TERMS

12.     Based on my training and experience, the following technical terms are used to covey the following meanings:

   a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including

data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and

  receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

 f. Portable media player. A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock or games. Most cell phones currently manufactured contain portable medial players as a standard feature.

 g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

13. Based on your affiant's training, experience, research, and from consulting the manufacturer's advertisements and product technical specifications available online for these types of cell phones, and based upon your affiant's discussions with experts, your

affiant knows that the cell phone which is the subject of this search warrant application most likely has capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, Internet access device, as these are generally standard features.

14. In your affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device; evidence of where such persons were when they possessed or used the device; evidence of who such persons were with when they possessed or used the device; evidence of persons with whom they communicated when they possessed or used the device; evidence of text, email, other electronic messaging applications and voicemail communications between the person who possessed or used the device and others; and evidence of pictures and videos taken when they possessed or used the device. Navigational coordinates may also be transmitted to and/or from these devices to determine the user's location through a GPS application.

15. Based on your affiant's training, experience, and research, he believes that the SUBJECT DEVICE has some, if not all, of the capabilities described above. Your affiant bases his belief on the fact that he has seized various phones in the past, has observed the difference between cell phones with these capabilities, and those that do not, and has had experience with countless cell phones capable of the functions stated above, as well as discussions with experts on the capabilities of wireless telephones in general, and his personal research into the functions of certain brands and models.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. Based on your affiant's knowledge, training, and experience, he knows that electronic devices, such as the SUBJECT DEVICE, can store information for long periods of time. Similarly, things that have been viewed via or uploaded to the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools. Additionally, electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium,

deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on an electronic device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data. Information described in this affidavit can often be recovered by forensic experts using forensic tools and software.

17. As further described in this affidavit and Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, where it was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the SUBJECT DEVICE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a

review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the electronic device and the application of knowledge about how the electronic device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium, for example, the absence of the entry of a name in a contact list as evidence that the user(s) of a device did not have a relationship with that party.

## CONCLUSION

18.    Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the previously seized SUBJECT DEVICE will contain evidence described in Attachment B in support of an investigation related to the crime involving Manslaughter, in violation of Title, 18 United States Code, Sections 1112 and 1153.  The examination of the SUBJECT DEVICE may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the devices to human inspection to determine whether it is evidence described by the warrant.

19.    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion into a premise.  Consequently, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

20.   I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.

DANIEL DEANTONIO
Digitally signed by DANIEL DEANTONIO
Date: 2022.12.07 08:22:30 -07'00'

Daniel DeAntonio, Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically
this 7th day of December, 2022:

Honorable Lynnette C. Kimmins
United States Magistrate Judge, District of Arizona

# ATTACHMENT A

## DESCRIPTION OF ITEMS TO BE SEARCHED

1. Black Samsung cell phone; IMEI: 350214928143539



## ATTACHMENT B
## ITEMS TO BE SEIZED

1. All records including call records, text messages, email, or third-party applications on the SUBJECT DEVICE described in Attachment A that relate to the crime involving Manslaughter, in violation of Title 18, United States Code, Sections 1112 and 1153;

2. Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, and documents;

3. Photographs and/or videos of drugs and/or alcohol and photographs and/or videos of persons and events occurring on November 19-20, 2022;

4. Any and all correspondence, including but not limited to telephone calls, messages, chat logs, and emails, including any/all communications between JOHNSON and MANUEL;

5. Any and all notes, documents, records, instructions, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning drugs and/or alcohol and/or related to violations of 18 U.S.C. §§ 1112 and 1153 and events occurring on November 19-20, 2022;

6. Any online identifications or handles assigned to JOHNSON and MANUEL, including but not limited to identifications for Twitter, Snapchat, Instagram, WhatsApp, Facebook, Facebook messenger, telegram, etc.; and

7. Any contacts, friends lists, address books, or related items.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.